Ryan Shannon (OR Bar. No. 155537)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6407
rshannon@biologicaldiversity.org

Jeremiah Scanlan (MA Bar No. 715693)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6400
jscanlan@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### Portland Division

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; NATIVE FISH SOCIETY; UMPQUA WATERSHEDS; PACIFIC RIVERS; <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE; EMILY MENASHES, in her official capacity as Acting Assistant Administrator for Fisheries of the National Marine Fisheries Service; and JEREMY PELTER, in his official capacity as Acting Secretary of the U.S. Department of Commerce; <br><br> *Defendants*. | Case No. 3:25-cv-258 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      Plaintiffs, the Center for Biological Diversity ("Center"), the Native Fish Society, Umpqua Watersheds, and Pacific Rivers, bring this case challenging the National Marine Fisheries Service's ("Service") failure to issue timely 12-month findings on petitions to list the Oregon Coast ("OC") and Southern Oregon and Northern California Coastal ("SONCC") Chinook salmon, and to list the Washington Coast spring-run Chinook salmon, in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary, congressionally mandated deadlines. The agency's failure to meet the deadlines delays crucial, lifesaving protections for these species, increasing their risk of extinction.

2.      Plaintiffs bring this lawsuit for declaratory and injunctive relief, and seek an order declaring that the Service violated section 4(b)(3)(B) of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to timely issue the 12-month findings for these species, and directing the Service to issue them by a date certain.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; and 5 U.S.C. § 706(2).

4.      Plaintiffs provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to the Service dated November 15, 2024. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because a substantial part of the violations of law by Defendants occurred in this district. Similarly, venue is proper in the Portland Division according to Local Rule 3-2 because a substantial part of the events giving rise to the claim occurred in this Division because the Service's West Coast Region office which responded to the petitions to list the OC and SONCC Chinook salmon and the Washington Coast spring-run Chinook salmon is located in Portland, Oregon.

## PARTIES

6.      Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including Portland, Oregon. The Center has more than 79,000 active members throughout the country.

7.      Plaintiff the NATIVE FISH SOCIETY is a non-profit organization that advocates for the recovery and protection of wild, native fish in the Pacific Northwest. The Native Fish Society is headquartered in Oregon City, Oregon.

8.      Plaintiff UMPQUA WATERSHEDS is a non-profit organization that advocates for the protection and restoration of the ecosystems of the Umpqua River watershed in the State of Oregon. Umpqua Watersheds is headquartered in Roseburg, Oregon.

9.      Plaintiff PACIFIC RIVERS is a non-profit organization that protects and restores the watershed ecosystems of the West through advocacy, education, and stewardship. Pacific Rivers is headquartered in Portland, Oregon.

10.     Plaintiffs bring this action on behalf of their members who derive recreational, aesthetic, educational, scientific, professional, and other benefits from these species and their

habitats. As a multitude of threats continue to push the OC and SONCC Chinook salmon and Washington Coast spring-run Chinook salmon dangerously close to extinction, Plaintiffs' members' interests in protecting and recovering these species and their habitat are directly harmed by the Service's failure to issue timely 12-month findings which delay critical protections under the ESA which can prevent these species from continuing to slide towards extinction and put them on the path to recovery.

11.     For example, Center member Jeff Miller lives in southern Oregon within the Rogue River watershed and has advocated for conservation of the Chinook salmon in southern Oregon and northern California for over two decades. The disappearance of SONCC Chinook salmon harms Mr. Miller personally. He regularly visits rivers in the Rogue River watershed to recreate and to observe and photograph wildlife, including SONCC Chinook salmon. He experiences aesthetic fulfillment from viewing and interacting with SONCC Chinook salmon in their natural habitat. Miller plans to continue weekly visits to the Rogue River in 2025 to observe SONCC Chinook salmon, and he plans to participate in extended excursions including rafting the Rogue River in summer and fall of 2025 and camping along the Smith River in summer of 2025.

12.     Stanley Petrowski is a member of the Center, the Native Fish Society, and Umpqua Watersheds, and has personal interests in the OC Chinook salmon that are harmed by the Service's failure to list the species. For almost twenty years, Mr. Petrowski has been concerned about the health of the OC Chinook salmon where he lives on the South Umpqua River. At least a dozen times throughout the year, he visits OC Chinook salmon along the South Umpqua River to recreate, observe the species, and assist federal and state agencies with survey efforts for the species. He plans to continue making these regular visits in spring, summer, and

fall of 2025. Observing OC Chinook salmon and their life cycle is an aesthetic pleasure for Petrowski.

13. Center member Jeff Mischler's life and livelihood is deeply intertwined with OC Chinook salmon as a hunter, angler, outdoorsman, writer, and content producer. Mr. Mischler has been fishing for OC Chinook salmon for over fifty years and works as a writer, photographer, and videographer for nature magazines and trade organizations, as well as producing his own content, including a best-selling flyfishing DVD series. The Service's failure to protect the OC Chinook salmon threatens his professional and economic interests; if there are no more salmon, he cannot write or produce content about them. Mr. Mischler's personal interests are also affected, as Mr. Mischler recreates and observes OC Salmon every year, throughout the year. In the spring, he fly-fishes for OC Chinook salmon in the estuaries of the Tillamook basin, and he also fishes throughout the summer and fall. When OC Chinook salmon are present, he drives at least weekly along the rivers of the Oregon Coast where he lives to observe and photograph them. He plans to fly-fish for OC Chinook Salmon in the Tillamook basin again in the spring of 2025 and to observe and photograph OC Chinook salmon along the rivers where he lives at least weekly throughout 2025.

14. Shane Anderson is a member of the Center and his personal and recreational interests are harmed by the Service's failure to protect the Washington Coast spring-run Chinook salmon as a fisherman, conservationist, educator, and documentary filmmaker. Several times every summer, Mr. Anderson visits Washington Coast spring-run Chinook salmon in the rivers of the Olympic Peninsula in Washington State to observe them and perform informal surveys. He plans to visit the Olympic Peninsula again several times in the summer of 2025 to go backpacking on the Queets River and attempt to observe Washington Coast spring-run Chinook

salmon in the pools where they oversummer. As a filmmaker, he focuses on conservation stories, and he has produced several documentaries about Washington Coast spring-run Chinook salmon. Mr. Anderson also wishes he could recreate by fishing for Washington Coast spring-run Chinook salmon but feels that is impossible right now because the species' population is in dire circumstances.

15.    Michael Morrison is the Chair of the Board of Directors for Pacific Rivers as well as its Executive Director. He frequently visits the rivers of the Olympic Peninsula to fish, hike, and observe wildlife, and he always searches for Washington Coast spring-run Chinook salmon in the rivers he visits. As an avid fisherman, Mr. Morrison wishes he could fish for and eat Washington Coast spring-run Chinook salmon but refrains from doing so because of the species' imperiled state. Mr. Morrison takes great aesthetic joy from observing healthy fish populations, and so looking for but not finding Washington Coast spring-run Chinook salmon while he recreates is a disappointment. He plans to visit the Olympic Peninsula in February 2025 and 2026 to fish and look for early spring-run Washington Coast Chinook salmon, and he also plans to visit the Olympic Peninsula in the summer or fall of 2025 to hike and look for the species. The Service's failure to protect the Washington Coast spring-run Chinook salmon harms Mr. Morrison's his aesthetic and recreational interests as a fisherman.

16.    Defendants' violation of the ESA's nondiscretionary mandatory deadline has delayed the ESA's protections to the OC, SONCC, and Washington Coast spring-run Chinook salmon. This inaction harms Plaintiffs' members' interests in the species by permitting the species' continued disappearance, thereby decreasing the likelihood that these members will encounter the species as part of their personal and professional excursions. These injuries are actual, concrete injuries presently suffered by Plaintiffs' members, are directly caused by

Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries by putting these species on the path to ESA protections, thus promoting their conservation and recovery.

17.    Defendant NATIONAL MARINE FISHERIES SERVICE is the agency within the Department of Commerce charged with implementing the ESA for the OC, SONCC, and Washington Coast spring-run Chinook salmon. The Secretary of Commerce has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

18.    Defendant EMILY MENASHES is the Acting Assistant Administrator for the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Emily Menashes is sued in her official capacity.

19.    Defendant JEREMY PELTER is the Acting Secretary of Commerce and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Jeremy Pelter is sued in his official capacity.

## STATUTORY FRAMEWORK

20.    The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley. Assoc. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

21.    The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id*. § 1532(16). In the context of Pacific salmon, the Service considers a

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    7

population of salmon to be a "distinct population" if it represents an "evolutionarily significant unit" or "ESU." A Pacific salmon population must satisfy two criteria to be an ESU: "(1) It must be substantially reproductively isolated from other conspecific population units; and (2) It must represent an important component in the evolutionary legacy of the species." 56 Fed. Reg. 58612, 58618 (Nov. 20, 1991).

22.     A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

23.     The ESA requires the Service to determine whether any species is endangered or threatened because of any of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id*. § 1533(a)(1).

24.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. *Id*. § 1533(b)(3). In response to a listing petition, the Service must publish the following three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id*. § 1533(b)(3)(A). This is known as the "90-day finding." If the Service finds in the 90-day finding that the petition does

not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

25.     If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id*.

26.     Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id*. § 1533(b)(3)(B).

27.     If the Service determines that listing is "warranted," it must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. *Id*. § 1533(b)(3)(B)(ii). If the Service determines that listing is "not warranted," it must publish its finding in the Federal Register. *Id*. § 1533(b)(3)(B)(i). If the Service determines that listing is "warranted but precluded," it must publish its finding in the Federal Register "together with a description and evaluation of the reasons and data on which the finding is based." *Id*. § 1533(b)(3)(B)(iii). A "warranted but precluded" finding is treated as a petition that has been resubmitted to the Service on the date of the finding and that presents substantial information indicating that the listing may be warranted. *Id*. § 1533(b)(3)(C)(i).

28.     Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id*. § 1533(b)(6)(A). This is known as a "final listing rule."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF          9

29.     The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species concurrent with listing. *Id*. § 1533(a)(3).

30.     In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id*. §1536(a)(2).

31.     ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id*. §§ 1538(a)(1)(B), 1539; see also *id*. § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id*. § 1533(f); authorize the Service to acquire land for the protection of listed species, *id*. § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id*. § 1535(d).

## **FACTUAL BACKGROUND**

**Chinook salmon**

32.     Adult Chinook salmon (*Oncorhynchus tshawytscha*) are the largest of all Pacific salmon and are known as "king salmon." Chinook salmon are born in freshwater streams throughout the Pacific Northwest and migrate to the ocean where they live and feed as they reach adulthood, before returning to the streams of their birth to reproduce and then end their life cycle. Chinook salmon include both spring-run and fall-run life histories, which are distinguished in part by the time that they begin their return migration to their spawning grounds.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    10

33.     Chinook salmon populations in the Pacific Northwest have declined sharply and are now only a fraction of their historical size. Spring-run Chinook salmon have been entirely extirpated in several river basins. Dams and water diversions prevent salmon from returning to their spawning grounds and logging and road construction have destroyed salmon habitats and degraded water quality. Hatchery-raised hybridizations of spring-run and fall-run Chinook salmon threatened to weaken the genetic diversity and fitness of native salmon populations, and may outright replace native spring-run Chinook salmon.

34.     OC Chinook salmon inhabit nine river systems in Oregon between Tillamook Bay and the Coquille River while SONCC Chinook salmon inhabit the Rogue, Klamath, Trinity, and Smith Rivers. OC and SONCC Chinook salmon face numerous threats, including dams and water diversions impeding migration, habitat degradation from logging, competition from hatchery-raised fish, and introduced predators. As a result, OC and SONCC Chinook salmon populations have declined precipitously from their historical size and have been extirpated from several river basins.



COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    11

Oregon Coast Chinook Salmon (Credit: Conrad Gowell, Native Fish Society)

35.     Washington Coast spring-run Chinook salmon inhabit the Chehalis, Quinault, Queets/Clearwater, Hoh, and Quillayute River basins in Washington State. Washington Coast spring-run Chinook salmon face numerous threats, including dams and water diversions impeding migration, habitat degradation from logging, climate change, and competition from hatchery-raised fish. As a result, Washington Coast spring-run Chinook salmon populations have declined precipitously from their historical size, and in at least one river basin average only around 100 fish during annual spawning runs.



Spring-Run Chinook Salmon, Skookumchuck River, Washington (Credit: Shane Anderson)

**Listing Petition and Response**

36.     The Center, Native Fish Society, and Umpqua Watersheds petitioned the Service on August 4, 2022 to list the OC and SONCC ESUs, as endangered or threatened species under the ESA and designate critical habitat.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    12

37.     The Service found the OC and SONCC Chinook salmon may warrant listing on January 11, 2023. 88 Fed. Reg. 1548 (Jan. 11, 2023). Specifically, the Service's positive 90-day finding found that the petition presented substantial information that indicated listing may be warranted due to threats from habitat degradation from logging, roads, dams, and water diversions, the inadequacy of existing regulatory protections, competition from hatchery-raised fish, and varying ocean conditions due to climate change. *Id.* at 1551–55.

38.     Because the Service found the petition may be warranted, its 12-month finding was due one year after receipt of the petition. The deadline for publication of the 12-month finding was August 4, 2023, but the Service has not yet made a 12-month finding for the OC or SONCC Chinook salmon. The finding is thus past due.

39.     The Center and Pacific Rivers petitioned the Service on July 17, 2023, to list the Washington Coast spring-run Chinook salmon ESU under the ESA and designate critical habitat.

40.     The Service found the Washington Coast spring-run Chinook salmon may warrant listing on December 7, 2023. 88 Fed. Reg. 85718 (Dec. 7, 2023). Specifically, the Service's positive 90-day finding found that the petition presented substantial information that indicated listing may be warranted due to threats of habitat degradation from logging, roads, dams, water diversions, migration barriers, and pollutants, inadequacy of existing regulatory protections, and changing ocean conditions due to climate change. *Id.* at 85182–84.

41.     Because the Service found the petition may be warranted, its 12-month finding was due one year after receipt of the petition. The deadline for publication of the 12-month finding was July 17, 2024, but the Service has not yet made a 12-month finding for the Washington Chinook spring-run salmon. The finding is thus past due.

## CLAIMS FOR RELIEF

**Violation of the ESA for Failure to Publish Timely 12-Month Findings for the OC, SONCC, and Washington Coast Spring-Run Chinook salmon**

42.     Plaintiffs re-allege and incorporate all allegations set forth in the preceding paragraphs.

43.     The ESA requires the Service to publish a 12-month finding within 12 months of receiving a petition to list a species under the Act when the Service has made a positive 90-day finding that listing may be warranted. 16 U.S.C. § 1533(b)(3)(B).

44.     In response to the 2022 listing petition from the Center, the Native Fish Society, and Umpqua Watersheds, the Service issued a positive 90-day finding for the OC and SONCC Chinook salmon in 2023 and thus 12-month findings were due 12 months after the petition was submitted—August 4, 2023.

45.     In response to the 2023 listing petition from the Center and Pacific Rivers, the Service issued a positive 90-day finding for the Washington Coast spring-run Chinook salmon in 2023 and thus a 12-month finding was due 12 months after the petition was submitted—July 17, 2024.

46.     Defendants have not made statutorily-required 12-month findings for OC and SONCC Chinook salmon or Washington Coast spring-run Chinook salmon.

47.     Defendants' failure to perform their nondiscretionary duty to timely publish 12-month findings for OC and SONCC Chinook salmon or Washington Coast spring-run Chinook salmon violates the ESA. 16 U.S.C. § 1533(b)(3)(B).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment providing the following relief:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    14

1.    Declare that Defendants violated the ESA by failing to issue timely 12-month findings in response to the petitions to list the OC, SONCC, and Washington Coast spring-run Chinook salmon;

2.    Provide injunctive relief compelling Defendants to issue the 12-month findings by a date certain;

3.    Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4.    Grant Plaintiffs their reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5.    Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this February 18, 2025.

/s/ *Ryan Shannon*
Ryan Shannon (OR Bar. No. 155537)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6407
rshannon@biologicaldiversity.org

Jeremiah Scanlan (MA Bar No. 715693)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6400
jscanlan@biologicaldiversity.org
Pro Hac Vice Admission Pending

*Attorneys for Plaintiffs*
